1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10
11   JOSE GOMEZ,                          )    Case No. CV 10-02007 DMG (CWx)
                                          )
12                      Plaintiff,        )    **ORDER RE DEFENDANT'S MOTION**
                                          )    **FOR SUMMARY JUDGMENT AND**
13          v.                            )    **MOTION FOR JUDGMENT ON THE**
                                          )    **PLEADINGS**
14   CAMPBELL-EWALD COMPANY,              )
                                          )
15                      Defendant.        )
                                          )
16   _____)
17

18          This matter is before the Court on Defendant Campbell-Ewald Company's ("C-E")

19   motion for summary judgment [Doc. # 115] and motion for judgment on the pleadings

20   [Doc. # 130].  The Court held a hearing on March 30, 2012.  For the reasons set forth

21   below, Defendant's motion for summary judgment is GRANTED and motion for

22   judgment on the pleadings is DENIED.

                                        **I.**

                              **PROCEDURAL HISTORY**

25          On March 19, 2010, Plaintiff filed a class action complaint in this Court alleging a

26   single cause of action for violation of the Telephone Consumer Protection Act, 47 U.S.C.

27   § 227 *et seq.* ("TCPA").

28

Defendant filed a motion for summary judgment on October 18, 2011. Plaintiff filed an opposition on October 25, 2011 and a supplemental opposition on March 5, 2012. Defendant filed a reply on March 19, 2012. The parties filed supplemental briefs following the hearing. [Doc. ## 218-220, 223, 225-227, 229.]

Defendant filed a motion for judgment on the pleadings on November 7, 2011. Plaintiff filed an opposition on October 14, 2011. Defendant filed a reply on November 21, 2011.

## II.

## FACTUAL BACKGROUND

As it must on this motion for summary judgment, the Court sets forth the material undisputed facts and views all reasonable inferences to be drawn from them in the light most favorable to Plaintiff, the non-moving party.

C-E is a global advertising agency that provides marketing services to clients throughout the United States, including the United States Navy. (Declaration of Daniel Rioux ("Rioux Decl.") ¶ 1.) C-E is the Navy's advertising agent of record. (Declaration of Lee Buchschacher ("Buchschacher Decl.") ¶ 3.) Beginning in 2000, C-E contracted with the Navy to assist it in achieving its recruitment goals. (*Id.* ¶¶ 3-4; Rioux Decl. ¶ 3.) Navy Recruiting Command ("NRC") is the recruiting arm of the Navy that is devoted solely to Naval recruitment efforts. (Buchschacher Decl. ¶ 2.)

C-E entered into its first base or master contract with the Navy in September 2000 (the "2000 Base Contract"). (Auger Decl. ¶ 3.) The 2000 Base Contract provides as follows:

> Services to be performed include <u>all</u> advertising-related services, directly prescribed by the Contracting Officer or proposed by the contractor and approved for implementation by the Contracting Officer. In all instances, the Commander Navy Recruiting Command (CNRC) holds the ultimate right of approval for all deliverables under this contract.

(Auger Decl. ¶ 3, Ex. 1; emphasis in original [Doc. # 212 at 22].)

On September 21, 2005, C-E and the Navy executed order "VJBB" pursuant to the Navy's request and authorization for C-E to acquire additional media under the 2000 Base Contract for the purpose of supporting the Navy's recruitment efforts in 2006. (Auger Decl. ¶ 5; Rioux Decl. ¶ 4, Ex. 1.) On September 27, 2005, C-E and the Navy executed an amendment to the VJBB Order that authorized an increase in funds for the additional media requested by the Navy. (Auger Decl. ¶ 6; Rioux ¶ 5, Ex. 2.)

On or about December 16, 2005, C-E submitted a proposed media plan, as requested by the Navy. (Auger Decl. ¶ 7; Buchschacher Decl. ¶ 6, Ex. 2.) Among the various media was Exploratory Media, which included an option for "Wireless/Mobile Marketing to Expand on Navy's Direct Response efforts via SMS [text messaging] and WAP [wireless application protocol]." (Buchschacher Decl. ¶ 6, Ex. 2 at 15.) Fleet Industrial Supply Center ("FISC"), the Navy's contracting administrator, and NRC approved the wireless/mobile marketing option for 2006. (*Id.* Ex. 2 at 2.)

On January 4, 2006, a second amendment was made to the VJBB Order under the 2000 Base Contract in order to incorporate the December 16, 2005 media plan. (Auger Decl. ¶ 8; Rioux Decl. ¶ 5, Exs. 2-4.) The amendment included funds for "exploratory media" pursuant to that 2005 plan and provided that all media placement was to be completed on or before August 19, 2006. (Auger Decl. ¶ 8.)

On February 13, 2006, C-E issued a request for proposal for "executing wireless advertising from April-June, 2006 on behalf of [its] client, the United States Navy." (Rioux Decl. ¶ 7, Ex. 5.) The goal of the 2006 wireless strategy was to "recruit nearly 38,000 Active Duty, General Enlisted sailors," with the "[p]rimary target [being] male, 17-1/2 to 24 year[] old students; already in the workforce secondary." (*Id.*)

In response to C-E's request for proposals, MindMatics LLC submitted proposals dated February 22, 2006 and April 2, 2006. (Rioux Decl. ¶ 8, Exs. 6-7.) On March 17, 2006, C-E gave a PowerPoint presentation to NRC entitled "Navy 2006 Wireless/Mobile Tactical Media recommendations," which outlined "Exploratory Media" options

consistent with the Navy's goals.  (Rioux Decl. ¶ 10, Ex. 8; Buchschacher Decl. ¶ 8, Ex. 3.)  The 2006 presentation included a text message proposal from MindMatics to deliver a "Navy branded SMS (text) direct mobile 'push' program to the cell phones of 150,000 Adults 18-24 from an opt-in list of over 3 million."  (Buchscahcher Decl. ¶ 9, Ex. 3.)  C-E was required to obtain NRC approval to proceed.  (*Id.*)

The NRC "worked closely with C-E on the Navy's May 2006 text message recruiting campaign, and provided Navy oversight and approval.  (*Id.* ¶ 11.)   Lee Buchschacher, as the Deputy Director, Marketing and Advertising Plans Division, for the NRC and Cornell Galloway, an Enlisted Program Advertising Manager, "authorized and approved the text message campaign proposed by MindMatics on behalf of NRC."  (*Id.* ¶ 12; Rioux Decl. ¶ 12.)  Buchschacher "also reviewed, revised, and approved the creative for the Navy's text message."  (Buchschacher Decl. ¶ 12, Exs. 4-5; Rioux Decl. ¶ 12, Ex. 9)  The Navy approved the following message to potential Naval recruits:

> Destined for something big?  Do it in the navy.  Get a career.
> An education.  And a chance to serve a greater cause.  For a
> FREE Navy video call 1-800-510-2074.

(Buchscahcher Decl. ¶ 12, Ex. 5; Rioux Decl. ¶ 12, Ex. 9.)

Between May 10 and May 24, 2006, text messages were sent by MindMatics to potential Naval recruits between the ages of 18 and 24.  (Rioux Decl. ¶ 13.)  C-E did not send the text messages and never saw or took possession of the mobile numbers used for the Navy's text message campaign.  (Rioux Decl. ¶ 13.)  Instead, MindMatics handled the deployment, transmission and delivery of the text messages, including the use of its own SMS short code.  (Rioux ¶ 13, Ex. 10.)

Plaintiff received a text message from SMS shortcode 43704 on May 10, 2006. (Reilly Decl. ¶ 6, Ex. 5; Gomez Depo. at 35, Ex. 1.)

//
//
//

-4-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### C-E'S MOTION FOR JUDGMENT ON THE PLEADINGS[1]

In its motion for judgment on the pleadings, Defendant contends that Plaintiff's claim is time-barred by an Illinois two-year statute of limitations because Plaintiff filed his complaint almost four years after he received the allegedly unlawful text message at issue in this case.  The crux of Defendant's position is that Congress intended for courts to apply state law to TCPA claims and, therefore, the state statute of limitations applies to such claims.

Since the time that Defendant filed its motion, however, the United States Supreme Court issued its decision in *Mims v. Arrow Financial Services, LLC,* __ U.S. __, 132 S.Ct. 740, 181 L.Ed.2d 881 (2012).  In *Mims,* the Supreme Court clarified that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA *and* uniform application.  The Supreme Court also noted that, in enacting the TCPA, Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by a federal agency" and that "TCPA liability thus depends on violation of a federal statutory requirement or an FCC regulation, §§ 227(b)(3)(A), (c)(5), not on a violation of any state substantive law." *Id.* at 751.

---

[1] Judgment on the pleadings is properly granted only when, taking all the factual allegations in the pleadings as true, "the moving party is entitled to judgment as a matter of law." *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005) (*per curiam*) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)) (quotation marks omitted).  A court must construe the factual allegations in the pleadings in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009) (citing *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004)).  Thus, motions under Rule 12(c) are "functionally identical" to motions under Rule 12(b). *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Upon granting a motion for judgment on the pleadings, a court should grant leave to amend unless it "determines that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*)) (quotation marks omitted).

1    In light of the Supreme Court's ruling in *Mims* that the TCPA <u>is</u> intended to have

2    uniform application, the Court finds that the four-year statute of limitations in 28 U.S.C.

3    §1658 applies to TCPA claims.[2]

4    The Court therefore denies Defendant's motion for judgment on the pleadings.

5    ## IV.

6    ## C-E'S MOTION FOR SUMMARY JUDGMENT

7    **A.**    <u>**Legal Standard**</u>

8    Summary judgment should be granted "if the movant shows that there is no

9    genuine dispute as to any material fact and the movant is entitled to judgment as a matter

10   of law."  Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207,

11   1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case.

12   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202

13   (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a

14   verdict for the nonmoving party."  *Id*.  Partial summary judgment may be sought on any

15   claim or defense, or part thereof, and the court may grant less than all of the relief

16   requested by the motion.  *See* Fed. R. Civ. P. 56(a), (g).

17   The moving party bears the initial burden of establishing the absence of a genuine

18   issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91

19   L.Ed.2d 265 (1986).   Once the moving party has met its initial burden, Rule 56(c)

20   requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or

21   by the 'depositions, answers to interrogatories, and admissions on file,' designate

22   'specific facts showing that there is a genuine issue for trial.'"  *Id*. at 324 (quoting Fed. R.

23

24   ───────────────

25   [2] The federal "catchall" limitations statute, 28 U.S.C. § 1658 provides that:
          Except as otherwise provided by law, a civil action arising under an Act of

26        Congress enacted after the date of the enactment of this section may not be
          commenced later than 4 years after the cause of action accrues.

27   28 U.S.C. § 1658.  A cause of action is governed by 28 U.S.C. § 1658 "if the plaintiff's claim against the

28   defendant was made possible by a post-1990 enactment."  *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S.
     369, 382 (2004).  The TCPA was enacted in 1991.

Civ. P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz,* 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

**B.   Discussion**

Gomez alleges a single cause of action for violation of the TCPA. C-E contends, *inter alia,* that Gomez's claim fails as a matter of law because, insofar as the Navy is immune from liability under the TCPA, C-E is also immune as a result of derivative sovereign immunity.

Because the United States cannot be sued without the consent of Congress, *Block v. North Dakota ex rel. Bd. Of Univ. & Sch. Lands,* 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed. 840 (1983), and Congress did not consent to TCPA suits against the federal government, 47 U.S.C. § 227(b)(1), the Navy cannot be sued for violation of the TCPA. Indeed, "[s]overeign immunity is jurisdictional in nature. *FCIC v. Meyer,* 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994). "[W]aiver of [immunity] must be unequivocally expressed in statutory text and will not be implied." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed. 486 (1996).

Inasmuch as C-E acted on behalf of the Navy, it is also immune under the doctrine of derivative sovereign immunity established by the Supreme Court in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21-22, 60 S.Ct. 413, 84 L.Ed. 554 (1940). In *Yearsley,* the Supreme Court held that, "if [the] authority to carry out the project was validly conferred . . . there is no liability on the part of the contractor for executing [the Government's] will." 309 U.S. at 20-21. An agent is liable only if "he exceeded his authority or that [the authority] was not validly conferred." *Id.* at 21; *see also Butters v. Vance Int'l , Inc.*, 225 F.3d 462, 466 (4th Cir. 2000) (it is "well-settled law that

1 contractors and common law agents acting within the scope of their employment for the
2 United States have derivative sovereign immunity").

3 Gomez does not contend disagree that the Navy is immune. Instead, citing to the
4 Ninth Circuit's decision in *In re Hawaii Fed. Asbestos Cases,* 960 F.2d 806 (9th Cir.
5 1992), Gomez takes the position that C-E must meet the five-factor test established in the
6 later decision *Boyle v. United Technologies Corp.*, 487 U.S. 500 , 108 S.Ct. 2510, 101
7 L.Ed.2d 442 (1988), in which the Supreme Court applied the concept of derivative
8 sovereign immunity to military contractors. (Pl.'s Opp'n at 4; citing *In re Hawaii*, 960
9 F.2d at 811.)

10 Gomez's reliance on *Boyle* and *In re Hawaii* is misplaced. In fact, the Ninth
11 Circuit could not have been more explicit in *In re Hawaii* that the military contractor
12 defense outlined in *Boyle* applies to the specific situation in which a contractor produces
13 military equipment for the Government.[3] "The *Boyle* Court repeatedly described the
14 military contractor defense in terms limiting it to those who supply military equipment to
15 the government." *In re Hawaii,* 960 F.2d at 810 (citing *Boyle,* 487 U.S. at 512)). "The
16 fact that the military may order such products does not make them 'military equipment.'"
17 *Id.* at 811. Rather, the limitation of liability "only with respect to the military equipment
18 they produce for the United States is consistent with the purposes the Court ascribes to
19 that defense" and that those "same concerns do not exist in respect to products readily
20 available on the commercial market." *Id.* at 811.

21 Gomez addresses *Yearsley's* applicability to this case in a single footnote and
22 points to no evidence indicating that C-E exceeded the scope of its authority to send the
23 text message at issue. Instead, relying on *In re Hanford,* 534 F.3d 986 (9th Cir. 2007),

24

25 _____

    [3] The military contractor defense set forth in *Boyle* "immunizes contractors who supply military
26 equipment to the government from the duties imposed by state tort law" and prohibits the imposition of
liability when "(1) the United States approved reasonably precise specifications; (2) the equipment
27 conformed to those specifications; and (3) the supplier warned the United States about the dangers in the
use of the equipment that were known to the supplier but not to the United States." *In re Hawaii,* 960
28 F.2d at 810 (citing *Boyle,* 487 U.S. at 512).

Gomez contends that *Yearsley* is limited to "principal-agent relationships where the agent had no discretion in the design process and completely followed government specifications," *id.* at 1001, and that, in any event, C-E was not acting as the Navy's agent. (Pl.'s Opp'n at 4 n.1.)

Gomez's reliance on *In re Hanford* is equally unavailing. The issue before the court in *In re Hanford* was whether the Price Anderson Act preempted reliance on the common law doctrine of derivative sovereign immunity. In its analysis, the Ninth Circuit interpreted *Yearsley* as limiting "the applicability of the defense to principal-agent relationships where the agent had no discretion in the design process and completely followed government specifications." *In re Hanford,* 534 F.3d at 1001.

Yet, *Yearsley* does not preclude contractors such as C-E from invoking derivative immunity. *See* 309 U.S. at 20-21 ("if [the] authority to carry out the project was validly conferred . . . there is no liability on the part of the contractor for executing [the Government's] will"); *see also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 205 (5th Cir. 2009) ("*Yearsley* does not use the word 'agent' but also uses 'contractor' and 'representative"). *Yearsley* did not at all examine the contractor's relationship with the government to determine whether there was an agency relationship and the Ninth Circuit applied *Yearsley* without any discussion of an agency relationship in *Myers v. U.S.*, 323 F.2d 580, 583 (9th Cir. 1963). *See Ackerson,* 589 F.3d at 206 (cataloging federal court decisions applying *Yearsley* without an agency relationship analysis).

The Fourth Circuit has similarly recognized that "courts define the scope of sovereign immunity by the nature of the function being performed—not by the office or the position of the particular employee involved." *Butters,* 225 F.3d at 466 ("As a result, courts have extended derivative immunity to private contracts, particularly in light of the government's unquestioned need to delegate governmental functions").

Here, it is undisputed that the Navy contracted with C-E to obtain advertising-related services, subject to ultimate approval by the NRC. That 2000 Base Contract was later amended in order to include advertising to support the Navy's recruitment efforts

and included an option for wireless marketing.  Pursuant to those agreements, C-E acted at the Navy's direction to effectuate a text message recruitment campaign.  C-E presents uncontroverted evidence in which the Navy states unequivocally that it "worked closely with C-E on the Navy's May 2006 text message recruiting campaign, and provided Navy oversight and approval.  (Buchschacher Decl. ¶ 11.)  The Navy "also reviewed, revised, and approved the creative [sic] for the Navy's text message." (Buchschacher Decl. ¶ 12, Exs. 4-5; Rioux Decl. ¶ 12, Ex. 9.)

As such, the Court finds that Gomez's claim for violation of the TCPA fails as a matter of law.  Acting as a Navy contractor, C-E is immune from liability under the doctrine of derivative sovereign immunity.  The Court grants C-E's motion for summary judgment.  Given the Court's ruling, the Court need not address C-E's remaining grounds for its motion.

## V.

## CONCLUSION

In light of the foregoing, C-E's motion for summary judgment is **GRANTED** and its motion for judgment on the pleadings is **DENIED**.


**IT IS SO ORDERED.**


DATED:     February 22, 2013

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE